JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Donnie Davidson (Davidson), appeals his conviction for carrying a concealed weapon and having a weapon while under disability. For the following reasons, we affirm.
 {¶ 2} On August 1, 2007, a Cuyahoga County Grand Jury indicted Davidson on carrying a concealed weapon with a forfeiture specification, and having a weapon while under disability.
 {¶ 3} The facts giving rise to the instant case began on July 20, 2007, at 9602 Elizabeth Avenue, Cleveland, Ohio, at approximately 9:00 p.m. Davidson and his girlfriend, Toya, were arguing in a front yard. Davidson left, but when he returned, he began fighting with his friend, Lugene Scott (Scott) aka "Gino," his girlfriend's brother.
 {¶ 4} Davidson smacked a cellular phone from Scott's hands while Scott sat on the front porch. Davidson then punched Scott. Scott struck Davidson back and slammed Davidson to the ground. As Davidson began to stand up, he reached towards his pants and retrieved a gun.
 {¶ 5} During the tussle, Scott was able to take Davidson's gun from him. Scott then pulled out his own gun and pointed one of the guns at Davidson. Damien Taylor (Taylor), Davidson's and Scott's friend, intervened to break up the altercation. Scott then shot Davidson in the hip and shot Taylor several *Page 4 
times.
 {¶ 6} Olivia Walton (Olivia) and her daughter, Ramie Walton (Ramie), were visiting family, Joyce Hood (Hood) and Brittany Blanks (Blanks), across the street and two doors down, and witnessed the altercation from their front porch.
 {¶ 7} On February 19, 2008, the case proceeded to a bifurcated trial; the charge for carrying a concealed weapon was tried to the jury, and the charge for having a weapon while under disability was tried to the bench. On February 21, 2008, the jury returned a verdict of guilty of carrying concealed weapon under Count 1 of the indictment, and the judge found the defendant guilty of having a weapon under disability under Count 2.
 {¶ 8} On February 29, 2008, the trial court sentenced Davidson to 2 years imprisonment: 18 months on the carrying a concealed weapon charge and 2 years on having a weapon while under disability charge, sentences to run concurrent. The court ordered the forfeiture of the weapon, a handgun (Beretta .25 caliber semi-auto). Davidson was advised to 3 years of postrelease control pursuant to R.C. 2967.28.
 {¶ 9} Davidson appeals, asserting six assignments of error for our review.
ASSIGNMENT OF ERROR NUMBER ONE "The defendant was denied a fair trial and the right to confront his accusers in violation of the Sixth and Fourteenth Amendment [sic] of the U.S. Constitution and *Page 5 Article I, Section 10 of the Ohio Constitution when prejudicial hearsay permeated the trial."
 {¶ 10} Davidson argues that the trial court erred when the following evidence was presented during trial: the 911 call from Scott; Scott refused to testify when called; and the State read from witness statements when the witnesses were testifying.
 {¶ 11} We review the admission and exclusion of evidence upon an abuse of discretion standard. State v. Finnerty (1989), 45 Ohio St.3d 104. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 12} Regarding admission of the 911 call that Scott placed, Davidson failed to raise this issue with the trial court. "[I]t is well settled that appellate courts cannot decide appeals on the basis of information presented in a brief for the first time on appeal." State v. Pettry
(Feb. 22, 2001), Cuyahoga App. No. 78186; see, also, State v.Ishmail (1978), 54 Ohio St.2d 402. "An issue is waived, absent a showing of plain error, if it is not raised at the trial level." State v.Phillips, 74 Ohio St.3d 72, 1995-Ohio-91; State v. Glaros (1960),170 Ohio St. 471; Crim. R. 52.
 {¶ 13} Crim. R. 52(B) reads: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the *Page 6 
court."
 {¶ 14} We have held that, "[precedent overwhelmingly supports the conclusion that 911 calls are admissible either as excited utterances or present sense impressions." State v. Rose, Cuyahoga App. No. 89457,2008-Ohio-1262.
 {¶ 15} Pursuant to Evid. R. 803(2), an excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."
 {¶ 16} The Supreme Court of Ohio established a four-part test for determining the admissibility of an excited utterance:
 "Such testimony as to a statement or declaration may be admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds[:]
 (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective,
 (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,
 (c) that the statement or declaration related to such *Page 7 startling occurrence or the circumstances of such startling occurrence, and
 (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." Potter v. Baker (1955), 162 Ohio St. 488, at paragraph two of the syllabus.
 {¶ 17} Here, the first 911 call was placed at 9:12 p.m., and Scott's 911 call was placed at 9:25 p.m., 13 minutes later. Despite this 13-minute lapse in time, we find Scott's 911 call an excited utterance because he was still clearly under the stress of excitement caused by shooting Davidson and Damien, his friends. Scott's reflective faculties were stilled and his statements and declarations unreflective, sincere expressions.
 {¶ 18} We find that his statements were made before there was time for such nervous excitement to lose a domination over his reflective faculties. Scott dialed 911 from a bush in which he was hiding after shooting two of his friends.
 {¶ 19} Scott's statement also related to the event at issue of which he had firsthand knowledge. Therefore, we find no plain error in the admission of Scott's 911 call.
 {¶ 20} Regarding Scott's refusal to testify, we cannot find, as Davidson asserts, that "no comment" implies the truth of the matter asserted. Further, Davidson did not present any case law in support thereof. *Page 8 
 {¶ 21} Regarding the State's introduction of Ramie's and Hood's written statements, Evid. R. 613(b) addresses admission of extrinsic evidence of a prior inconsistent statement and reads in part:
 "Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:
 (1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
 (2) The subject matter of the statement is one of the following:
 (a) A fact that is of consequence to the determination of the action other than the credibility of a witness * * *."
 {¶ 22} In each instance, Ramie and Hood testified that they did not see Davidson with a gun; whereas, in their written statements to the police, they stated they did see Davidson with a gun. Thus, their prior inconsistent statements were admitted solely for the purpose of impeaching them. Additionally, Ramie and Hood were afforded the opportunity to explain their inconsistencies, and Davidson had the opportunity to interrogate them based on those statements. Whether Davidson possessed a gun that evening is a fact of consequence to the determination of the action other than the credibility of Ramie or Hood in light of the charges against Davidson. Thus, we find no plain *Page 9 
error here.
 {¶ 23} Davidson's first assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER TWO "The appellant was denied a fair trial when evidence was admitted that appellant had a general propensity to carry guns when he was on trial for carrying a concealed weapon and having a weapon while under disability."
 {¶ 24} Davidson argues that he was denied a fair trial when the trial court admitted evidence of his propensity to carry guns. However, Davidson did not object to the challenged testimony; thus, we review for plain error.
 {¶ 25} Evid. R. 404(B) addresses other crimes, wrongs or acts, and reads as follows:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 26} The challenged testimony of Hood reads as follows:
 "Q. Do you know Tez [Davidson] to be someone who carries a weapon?
 A. Yes.
 Q. Does he carry it all the time?
 A. Sometimes he has it. Sometimes he don't. Not all the time. *Page 10 
 Q. How long have you known Tez?
 A. Since he was little. Since he's about five." (Tr. 282.)
 {¶ 27} Davidson also cites to the examination of Hood by the court:
 "Q. Did you ever see Tez have a gun in his waistband?
 A. Yes." (Tr. 328.)
 {¶ 28} The State argues that the challenged testimony is admissible evidence of habit. Notably, however, "[w]here constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." State v. Williams (1983),6 Ohio St.3d 281, at paragraph six of the syllabus.
 {¶ 29} In the case sub judice, the remaining evidence standing alone constitutes overwhelming proof of defendant's guilt. Thus, admission of the challenged testimony does not give rise to plain error.
 {¶ 30} Davidson's second assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER THREE "Appellant was prejudiced by ineffective assistance of counsel."
 {¶ 31} Davidson argues that his counsel was ineffective for failing to object to various testimony.
 {¶ 32} To establish a claim for ineffective assistance of counsel, Davidson *Page 11 
must satisfy the two-prong test set forth by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668. First, Davidson must prove that trial counsel's performance was deficient; namely, that counsel's errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment. Second, that the deficient performance prejudiced the defense, depriving defendant of a fair trial.
 {¶ 33} "With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at paragraph 2(b) of syllabus.
 {¶ 34} We must also note that, "[f]ailure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial." State v. Henderson, Cuyahoga App. No. 88185, 2007-Ohio-2372, quoting State v. Shannon (June 16, 1982), Summit App. No. 10505. "[T]rial tactics that are debatable generally do not constitute a deprivation of effective counsel." State v. Edwards (1998), Clermont App. No. CA97-04-035, at 16. "Counsel's decision not to object can be considered a trial tactic." Id.
 {¶ 35} Davidson's claim that counsel was ineffective for failing to object to the admission of Scott's 911 call and testimony must fail in light of our ruling on his first assignment of error. In light of our ruling on Davidson's second assignment of error, we cannot find that counsel was ineffective for failing to *Page 12 
object to Hood's testimony regarding Davidson's tendency to carry guns. With respect to Davidson's alleged confession, his counsel did more than object; he moved for a mistrial. The actions of Davidson's counsel in this trial did not create a reasonable probability that could have changed the outcome of the proceeding.
 {¶ 36} Further, we cannot find that Davidson's counsel was ineffective for failing to request DNA testing of the guns because the issue was whether Davidson was carrying a concealed weapon, which could be proven by the facts already established via witnesses.
 {¶ 37} Moreover, Davidson cites to a plethora of examples in which counsel arguably should have entered objections, including a portion of Police Officer Arthur Echol's testimony and a portion of the State's closing argument. However, Davidson fails to argue how the outcome of trial would have been different pursuant to Strickland.
 {¶ 38} Davidson's third assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER FOUR "The trial court erred in denying appellant's motion for acquittal pursuant to Criminal Rule 29 where there was insufficient evidence."
 {¶ 39} Davidson argues that the trial court erred when it denied his motion for acquittal pursuant to Crim. R. 29. *Page 13 
 {¶ 40} Crim. R. 29(A), which governs motions for acquittal, states:
 "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 41} Furthermore, in reviewing the sufficiency of the evidence, we have held:
 "A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. In reviewing for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. The motion `should be granted only where reasonable minds could not fail to find reasonable doubt.'" State v. McDuffie, Cuyahoga App. No. 88662, 2007-Ohio-3421, quoting State v. Apanovitch (1987), 33 Ohio St.3d 19, 23. (Internal citations omitted.) *Page 14 
 {¶ 42} Davidson was charged with carrying a concealed weapon pursuant to R.C. 2923.12(A)(2):
 "No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following: * * * A handgun other than a dangerous ordnance
 {¶ 43} R.C. 2901.22(B) sets forth the definition of knowingly:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 44} Handgun is defined as: "[a]ny firearm that has a short stock and is designed to be held and fired by the use of a single hand * * *." R.C. 2923.11(C)(1). A firearm is defined as: "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1).
 {¶ 45} The Ninth District Court of Appeals held the following as it pertains to concealment:
 "It is not necessary to prove that the shotgun was carried in such manner or in such location as to give absolutely no notice of its presence under any kind of observation. Rather, it is sufficient to support a conviction of carrying a concealed weapon to prove only that ordinary observation would give no notice of its presence." State v. Coker (1984), 15 Ohio App.3d 97. *Page 15 
 {¶ 46} In the case sub judice, Olivia testified that when Davidson reached towards his pants, Scott and Taylor went down. (Tr. 190.) Although Olivia did not specifically see Davidson with a gun, she saw him gesture with his pants. (Tr. 205.)
 {¶ 47} Ramie testified that she did not see Davidson with a gun, but he lifted up his clothes like he was looking for something. (Tr. 225, 232.) Ramie's written statement also stated that Taylor picked up Davidson's gun while he was trying to break up the fight between Davidson and Scott. (Tr. 226.) Ramie testified that her written statement was truthful. (Tr. 233-234.)
 {¶ 48} Hood also testified that Davidson reached back as if to retrieve something. (Tr. 288.) After the shooting, Hood saw Scott leaving with two guns. (Tr. 289.)
 {¶ 49} Brittany Blanks (Blanks) testified that she saw Davidson with a gun: "Yes. I seen Tez [Davidson] with a gun, and that's `cause Gino [Scott] had took the gun from Tez." (Tr. 259.) Blanks further testified:
 "That's how he [Scott] end [sic] up with two guns. * * * I seen Gino take the gun from him. * * * And then I guess Gino panicked, and he start shooting at Tez, and then Tez was like, you gonna shoot at me, you gonna shoot at me. * * * That's when Gino had shot him * * *."
Blanks reiterated the same throughout her testimony. (Tr. 263, 265.)
 {¶ 50} Thus in applying the law to the facts of this case, we find sufficient evidence to support Davidson's conviction for carrying a concealed weapon. *Page 16 
Three witnesses, Olivia, Ramie, and Hood saw Davidson reach back into his pants as if to retrieve a gun that was otherwise concealed. Blanks specifically saw Davidson with a gun. The police investigation revealed that two guns collected in the incident were loaded and operable.
 {¶ 51} Davidson was also charged with having a weapon while under disability pursuant to R.C. 2923.13(A)(3). Although Davidson includes the charge of having a weapon while under disability in this assignment of error, he fails to make any arguments in support thereof. See App. R. 16(A)(7).
 {¶ 52} Davidson's fourth assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER FIVE "Appellant was denied a fair trial due to prosecutorial misconduct."
 {¶ 53} Davidson argues that he was denied a fair trial due to prosecutorial misconduct when examining witnesses and during closing arguments.
 "A defendant is entitled to a new trial when a prosecutor makes improper remarks that substantially prejudice him. In order to reverse appellant's conviction because of prosecutorial misconduct, we must find that the remarks were improper and that the remarks prejudiced appellant." State v. Fears, Cuyahoga App. No. 89989, 2008-Ohio-2661. (Internal citations omitted.) *Page 17 
 {¶ 54} Moreover, "[i]t must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found defendant guilty." State v. Smith (1984), 14 Ohio St.3d 13. "To determine prejudice, the record must be reviewed in its entirety." State v.Frazier, 115 Ohio St.3d 139, 2007-Ohio-5048, at ¶ 170.
 {¶ 55} As discussed in Davidson's first, second, third, and fourth assignments of error, we find no error with admission of "other acts" testimony, Scott's testimony, admission of the 911 call, and admission of Ramie's and Hood's prior written statements.
 {¶ 56} Pertaining to the State's examination of Officer Echol, we find that absent the testimony, the jury still would have found Davidson guilty.
 {¶ 57} Regarding closing arguments, prosecutors are entitled to considerable latitude in opening and closing arguments. State v.Ballew (1996), 76 Ohio St.3d 244, 1996-Ohio-81. In closing argument, a prosecutor may comment freely on "what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott (1990),51 Ohio St.3d 160, quoting State v. Stephens (1970), 24 Ohio St.2d 76.
 {¶ 58} "Moreover, because isolated incidents of prosecutorial misconduct are harmless, the closing argument must be viewed in its entirety to determine whether the defendant has been prejudiced."State v. Stevens, Montgomery App. No. 19572, 2003-Ohio-6249;Ballew, supra. Here, in viewing the prosecution's *Page 18 
closing argument in its entirety, we cannot find that Davidson was prejudiced as a result thereof.
 {¶ 59} Therefore, Davidson's fifth assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER SIX "The trial court erred in denying appellant's motion for a mistrial."
 {¶ 60} Davidson argues that the trial court erred when it denied his motion for a mistrial. Specifically, Davidson contends that he was entitled to a mistrial as a result of Officer Jeffrey Weaver's testimony that Davidson allegedly confessed to the charged crimes. Such evidence was not discovered in any of the pretrial evidence exchanged under Crim. R. 16.
 {¶ 61} A mistrial is appropriate only when the ends of justice so require and a fair trial is no longer possible. State v. Garner,74 Ohio St.3d 49, 1995-Ohio-168. We thus review motions for mistrial upon an abuse of discretion standard. Id. at 59.
 {¶ 62} Here, the trial court made clear that although it was denying Davidson's motion for mistrial, it would strike the challenged testimony. (Tr. 477, 487.) "A trial jury is presumed to follow the instructions given to it by the judge." State v. Henderson (1988),39 Ohio St.3d 24, citing Parker v. Randolph *Page 19 
(1979), 442 U.S. 62.
 {¶ 63} Davidson's sixth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY J. BOYLE, J., and JAMES J. SWEENEY, J., CONCUR *Page 1