[Cite as *State v. Davis*, 2016-Ohio-694.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 102726

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CHARLIE DAVIS

DEFENDANT-APPELLANT

---

## JUDGMENT:
## REVERSED; CONVICTION VACATED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-591362-A

**BEFORE:** Stewart, P.J., Boyle, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 25, 2016

**ATTORNEY FOR APPELLANT**

Rick L. Ferrara
2077 East 4th Street, 2nd Floor
Cleveland, OH 44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

Brad S. Meyer
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, P.J.:

**{¶1}** The court, sitting without a jury, found defendant-appellant Charlie Davis guilty of domestic violence for an incident where he pulled the victim's hair weave and threw it to the ground. The two assignments of error raised in this appeal are that there was insufficient evidence to prove the physical harm element of domestic violence, and the domestic violence conviction is against the manifest weight of the evidence because the court failed to give adequate consideration to the claim that Davis acted in self-defense. We find the evidence insufficient to establish the offense of domestic violence, so we vacate the conviction.

**{¶2}** Davis's second assigned error argues that the state did not offer sufficient evidence to prove the offense of domestic violence. He maintains that he did nothing more than momentarily pull the victim's hair weave in order to have her release her grip from his sore hand, and that act alone was insufficient to establish the physical harm element of the offense.

**{¶3}** The Due Process Clause of the Fourteenth Amendment "protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), quoting *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The relevant question when reviewing a claim that the state failed to present sufficient evidence of

guilt "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* This is a highly deferential standard of review because "it is the responsibility of the [trier of fact] — not the court — to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. ___, 132 S.Ct. 2, 3, 181 L.Ed.2d 311 (2011).

{¶4} The state charged Davis with committing domestic violence in violation of R.C. 2919.25(A). That section states that no person shall "knowingly cause or attempt to cause physical harm to a family member or household member."

{¶5} The victim testified that she and Davis had a nine-year "on and off" relationship that produced four children. On the morning of the day when the incident between the two occurred, the victim barred Davis from the house they shared. She did this because she believed his association with certain individuals placed her children at risk — she learned from a neighbor that her house was the subject of a drive-by shooting just days earlier.

{¶6} Davis returned later in the day to retrieve some clothing. The victim permitted Davis into the house to retrieve his identification card, but they began arguing over his insistence that he be allowed to stay. The two were on the staircase leading to their second floor apartment when the victim became aware that Davis was holding her driver's license. This caused a scuffle and the victim conceded that she grabbed Davis's right hand — a hand that had recently been injured. The victim stated this resulted in

Davis "yanking my hair." Tr. 95. The victim testified that she wore a hair weave and that "[h]e ended up breaking my hair loose and loosening my tracks up." Tr. 97. Davis left the house. The victim then heard Davis breaking her car window (the basis for a criminal damaging count that is not a subject of this appeal). By her own admission, she was perspiring heavily, causing her hair weave to loosen: "I ended up pulling my tracks out waiting for the police to come. I was so mad." Tr. 98. The victim threw her hair extensions onto the driveway.

{¶7} The victim made a 911 call, and a police officer who responded to the scene discovered what he described as the victim's "wig" on the driveway. He testified that he did not see any injuries on the victim. Tr. 75. It was uncontradicted that the victim made no complaints of suffering any injury nor did she receive medical treatment.

{¶8} When announcing its verdict on the domestic violence count, the court noted that the victim had serious credibility issues. The victim admitted that when she called 911, she falsely reported that Davis was in possession of a .357 Magnum firearm, had put the gun in her mouth and threatened to kill her, and later fired three shots at the house. She claimed that she made these allegations with the hope that the police would arrest Davis for his own safety because some people to whom he owed money were "looking for him." When the responding police officer asked the victim about the gun, the victim doubled-down on her lie, saying that Davis had shot at a "beam" of the house. The police officer testified that he could find no evidence that Davis had a gun, much less that

he fired it as claimed by the victim. There were no bullet casings or obvious points of impact to be found anywhere on the scene.

**{¶9}** The victim had other credibility issues. For example, she testified that while Davis was in jail awaiting trial, they discussed whether she should claim that she was under the influence of PCP when she called the police as a means of excusing her false police report. Davis rejected that idea because he feared that children's services might take custody of their children. The couple also discussed that the victim would tell the police that Davis had only used a BB gun. When asked whether she and Davis were "working together," the victim said:

> [Davis] was trying to help me. He know that I lied cuz I put him in jail before on false lies. He just didn't want me to get in trouble for me lying so it wasn't like we trying to come up with nothing. It was just like he just don't want to see me in trouble.

The victim explained that on a prior occasion she made a false accusation against Davis, but went before the grand jury and told it that she lied and gave a false police statement.

**{¶10}** The court stated that it found the victim's version of events "incredible" and "questionable." It stated:

> [The victim] testified both on direct examination and on cross-examination that her hair and weave were pulled. She did testify that she pulled the rest of it out, that she was sweating. She did say that the defendant had grabbed her hair, pulled on her tracks, that she saw him break out the car windows. She made a motion when she testified to that, and when she was on the stand, I saw her using both of her hands as she described how the defendant did throw a brick in the back window. There's no testimony as to which hand would be the defendant's dominant hand and certainly there's no testimony that the defendant was disabled by virtue of having — it's been referred to as a bad hand and in fact, there is testimony that the weave

was pulled, that the weave was grabbed and corroborating testimony about the weave that made [the police officer] find it on the sidewalk.

I did not find it to be credible * * * [the assistant prosecuting attorney] said it's difficult to parse this out by the trier of fact, who can believe some of the testimony and not all, can disbelieve all, and here, I did not believe that with everything that was going on that two days after an incident where [the victim] says her house is being shot at because people said the defendant owed her money, that she staged this event two days later and put her weave on the sidewalk to make sure that the defendant would be arrested. I find that to be incredible. *I do find the fact that the weave was on the sidewalk — I'm sorry — on the driveway, found by [the police officer] after hearing from [the victim] that her hair was pulled, her tracks were pulled by the defendant*, and that they were tussling to be more than simply the word of a woman whose credibility at times is questionable.

(Emphasis added.)

{¶11} The court's remarks show that it considered the act constituting domestic violence to be the removal of the victim's hair extensions as evidenced by their presence on the driveway — a fact, the court states, is corroborated by the police officer. Viewing the evidence most favorably to the state shows that the victim, not Davis, removed the hair extensions and threw them on the driveway. There was no evidence at all that Davis pulled out the hair extensions and threw them on the ground.

{¶12} The court rejected the victim's version of events because it did not find her credible. Noting that the trier of fact is free to disbelieve some, but not all, of the victim's testimony, the court rejected the victim's testimony that she removed the hair extensions and concluded that Davis must have pulled out the hair extensions.

{¶13} The court could very reasonably find that the victim's testimony was not credible given that she had purposely lied on another occasion to have Davis incarcerated.

But having found the victim not credible, the court could not assume an alternative factual scenario where Davis pulled out the hair extensions — there was no testimony of any kind to support that conclusion. It is a bedrock principle of law that the trier of fact decide cases "solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). This was not a case where there was competing evidence — the victim's testimony stood alone. If the court did not believe the victim, there was no other evidence presented upon which it could find Davis guilty of domestic violence.

{¶14} Any assertion that a recording of the victim's 911 call to the police constituted evidence of domestic violence would be misplaced because the court found that the victim lied in making the 911 call. In that call, the victim reported that Davis had fired a handgun three times and threatened to kill her. When ruling on Davis's Crim.R. 29(A) motion for judgment of acquittal on counts of felonious assault (with a corresponding firearm specification) and having a weapon under disability, the court noted that the police officer who arrived on the scene found no shell casings or any other evidence to verify the 911 report that Davis discharged a firearm. The absence of corroborating evidence relating to the discharge of a firearm coupled with the victim's own recantation of her allegations against Davis led the court to state:

> The testimony on the stand from [the victim] was that there was no gun. I understand, and certainly it was clear that what [the victim] said on the stand is different than what [the victim] said in a 911 call to the police.

We also heard from [the victim] that she said she lied to cover a lie to cover a lie. She is, and I don't mean this disrespectfully, an admitted liar, but if a trier of fact finds that a witness has willfully lied in their testimony, and I do believe she's untruthful and she established that she is, I could disbelieve all her testimony and here, I believe that when there's uncontroverted parts of her testimony because of her lack of credibility, it is too much of a leap for the trier of fact, for any trier of fact, to conclude that a firearm was involved here.

{¶15} With the court having specifically rejected the victim's allegation that Davis used a firearm during the altercation, the 911 recording provides no independent evidence of domestic violence sufficient to overcome the victim's recantation of her accusations against Davis. And while the victim did state during the 911 call that Davis had yanked her hair and loosened a track of her weave, she testified at trial that he did so on the stairs inside the house because she had grabbed his sore hand and that she pulled the hair extensions from her head and threw them on the driveway. With the court finding that the presence of the hair weave outside on the driveway constituted proof of domestic violence, what happened on the stairs inside the house played no part in the court's ruling. The 911 recording thus provides no evidence in support of the conviction.

{¶16} The state argues that even without evidence that Davis caused physical harm, the court's verdict was justified because he knowingly *attempted* to cause physical harm by pulling on her hair extensions.

{¶17} Although the state offered as an alternative basis for conviction that Davis's actions could be viewed as an attempt to cause physical harm under R.C. 2919.25(A), the court's remarks when announcing its verdict show that it did not find Davis guilty of an attempt to cause physical harm. The court's emphasis on the hair extensions being found on the driveway were a clear indication that it based its verdict on the physical harm Davis allegedly caused when pulling the hair extensions out.[1] With the court having clearly articulated the basis for its verdict as one resting on Davis causing physical harm, and at the same time not having made any finding with respect to whether Davis attempted to cause physical harm to the victim while inside the house, we cannot find that the evidence supported a guilty finding on an attempt to commit physical harm. We sustain the second assignment of error and vacate Davis's conviction for domestic violence under Count 1 of the indictment. The first assignment of error is moot. *See* App.R. 12(A)(1)(c).

{¶18} Judgment reversed. Conviction vacated.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

---

[1]For this same reason, that part of the 911 recording in which the victim reported that Davis pulled her hair is not additional evidence to support the court's verdict. The victim testified that the act described in the 911 call occurred inside the house when Davis "yanked" her hair and loosened a track that held her hair weave. The court did not base its verdict on this act, but on the hair weave found outside on the driveway.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, PRESIDING JUDGE

SEAN C. GALLAGHER, J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION);
MARY J. BOYLE, J., DISSENTS (WITH SEPARATE OPINION)


SEAN C. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY:

{¶19} I concur in judgment only with the lead opinion, but I must write separately to clarify the status of the evidence cited by the dissent. The state never introduced the 911 tapes or the victim's written statement to police as substantive evidence of guilt in this case. During her direct examination, the victim testified to lying to the responding officers about the firearm in order to hasten their response. Tr. 99:16-18. In response, and irrespective of the impropriety of the state impeaching its own witness through hearsay, the state played the 911 tapes. After this exchange, the state attempted to refresh the witness's recollection with statements in her written statement to police officers. That statement was neither admitted into evidence as a recorded recollection, nor was it even used to refresh the victim's memory. Tr. 195-196. In response to seeing the report, the victim stated that her memory was not at issue — she just lied in the report. Tr. 105:5-7.

{¶20} As it pertains to the 911 tapes, extrinsic evidence of a prior inconsistent statement is only admissible if, in pertinent part, the statement is offered solely for the purposes of impeaching the witness, i.e., not as substantive evidence of guilt. Evid.R. 613(B). On a sufficiency of the evidence standard of review, this court cannot rely on evidence pertaining to the credibility of the witnesses. *State v. Julian*, 129 Ohio App.3d 828, 836, 719 N.E.2d 96, 101 (1st Dist.1998) (noting that prior inconsistent statements being used to impeach a witness are not substantive evidence of the crime itself).

{¶21} The state did not attempt to introduce the prior statements by establishing a foundation for an exception to the hearsay rule, either by demonstrating the applicability of Evid.R. 803(3) (excited utterance) or 803(5) (recorded recollection), or by establishing the statements were not hearsay pursuant to Evid.R. 801(D)(1). Further, we cannot affirm the conviction in this appeal, based on the theory that the excited utterance exception could have applied. The defense was not afforded the opportunity at trial to oppose the state's foundation for the introduction of the 911 tapes as substantive evidence of guilt. Because the state introduced the 911 tapes as impeachment evidence only, the defense had no reason to oppose its admission into evidence at the end of trial. That does not convert the impeachment evidence into substantive evidence for the purposes of a sufficiency of the evidence challenge.

{¶22} The dissent also asserted that the lead opinion *sua sponte* raised an argument about the trial court engaging in an "alternative factual scenario" to reach its ultimate decision that was not briefed or argued by the parties. I find the verbiage "alternative

factual scenario" in the lead opinion irrelevant to the disposition. The issue here is about the sufficiency of the evidence. If anything, the phrase "alternative factual scenario" goes to the heart of the sufficiency argument raised and briefed in this case. The reality is the trial court simply assumed facts that were not in the record, as outlined in paragraph 15 of the dissent. As Davis specifically argued on appeal, there was no evidence that pulling the hair extensions was an attempt to cause or caused physical harm to the victim in this case, an essential element to the domestic violence crime. The state had an opportunity to address Davis's argument. Thus, even if the rationale espoused in the lead opinion were the majority opinion of this panel, no violation of *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888 occurred.

{¶23} The victim recanted. The investigating officer and detective, the only other witnesses, were unable to provide sufficient circumstantial evidence to support a conviction. In this particular case, there was no other evidence to consider that demonstrated Davis's guilt; and I, therefore, concur in judgment only.

MARY J. BOYLE, J., DISSENTING:

{¶24} I respectfully dissent. Although the victim recanted her prior statements at trial, saying she lied in her 911 call and when the 911 operator called her back, and that she lied in her statement to police officers at the scene and in her statement to detectives a few days later, it is my view that there was sufficient evidence to find beyond a

reasonable doubt that Davis knowingly caused or attempted to cause physical harm to the victim in this case.

{¶25} In his sufficiency argument, Davis only argues that the state failed to present sufficient evidence of the physical-harm element of R.C. 2919.25(A). He contends that his actions did not establish an attempt to cause physical harm "as to their duration" or "as to their severity." Specifically, Davis argues that the evidence only showed that he "grabbed [the victim's] hair long enough for her to release" her grasp on him. He further argues that the evidence only established that he "attempted to grab [the victim's] fake hair," what he claims was "essentially" just a "wig." He maintains that there was no allegation that he "pulled out [the victim's] real hair."

{¶26} I disagree with Davis regarding what the state is required to prove under R.C. 2919.25(A). There is no requirement under R.C. 2919.25(A) that "physical harm" be of any certain duration or severity. In fact, an offender does not even have to cause injury to his victim to be guilty of domestic violence. *Cleveland v. Amoroso*, 8th Dist. Cuyahoga No. 100983, 2015-Ohio-95, ¶ 31, citing *State v. Roberson*, 5th Dist. Stark No. 2012CA00215, 2013-Ohio-3449, ¶ 18. "'A defendant may be found guilty of domestic violence even if the victim sustains only minor injuries, or sustains no injury at all.'" *Id.*, citing *State v. Blonski*, 125 Ohio App.3d 103, 114, 707 N.E.2d 1168 (9th Dist.1997). Any harm is sufficient. *Id.*

{¶27} Moreover, I wholeheartedly disagree with Davis's account of what occurred. The victim testified that she had just gotten her "weave" done, which she explained

meant that she just had hair extensions "glued in." The victim's "weave" was not just a "wig." Thus, Davis's actions were more akin to pulling the victim's "real hair," rather than pulling "just a wig." And the evidence showed that Davis pulled the victim's "glued in" extensions hard enough that it loosened "her tracks." That is sufficient evidence to establish "physical harm" under R.C. 2919.25(A).

{¶28} Accordingly, based upon Davis's only sufficiency arguments on appeal, I would overrule them and affirm the judgment of the trial court.

{¶29} The lead opinion, however, vacates Davis's domestic violence conviction after finding that the trial court wrongly "assume[d] an alternative factual scenario." I disagree for several reasons. First, Davis did not argue this point. Davis only argued that the state failed to present sufficient evidence of physical harm under R.C. 2919.25(A). Thus, the lead opinion improperly raises this issue sua sponte. The Ohio Supreme Court has made it clear that "[a]ppellate courts should not decide cases on the basis of a new, unbriefed issue without 'giv[ing] the parties notice of its intention and an opportunity to brief the issue.'" *See State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 24, quoting *State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168, 170, 522 N.E.2d 524 (1988) (reversing this court in part because although the defendant had challenged the sufficiency of the evidence in his direct appeal, he did not do so on the basis for which we reversed). It is my view that if the lead opinion wishes to reverse Davis's conviction on this issue, it should first give the parties an opportunity to brief it.

**{¶30}** I further disagree with the lead opinion that the trial court "assumed an alternative factual scenario." It is my view that the lead opinion has misconstrued what the trial court actually found and concluded. A review of the evidence and what occurred at trial is necessary.

**{¶31}** When the victim called 911, the victim was in a highly excited state; she was yelling and crying, and telling the operator to "hurry." The victim repeatedly told the operator that Davis just shot at her. The victim told the 911 operator that Davis shot at her three times. The victim further stated, "please hurry up, he's going to kill me." When the 911 operator called the victim back, which was before police officers had arrived, the victim told the operator that she and Davis had gotten into a fight, and that Davis pulled her hair and put a gun in her mouth while he dragged her, and then told her that he was going to kill her. The victim further stated that the gun that Davis used during the incident was a "357 long barrel" gun.

**{¶32}** Officer Ken Kirk responded to the victim's home. When he arrived, he said that he saw a car in the driveway that had "broken out windows." He further saw "a weave in the driveway on the ground." When he first saw the victim, Officer Kirk said that she was "upset" and "hysterical." Officer Kirk attempted to testify as to what the victim told him when he arrived at the scene, but the trial court repeatedly sustained Davis's objections and would not permit Officer Kirk to discuss what the victim said when he arrived.[2]

---

[2] It is my view that the trial court erred in doing so. The officers arrived soon after the

{¶33} The victim, however, testified on cross-examination as to what she actually told police officers when they arrived. The victim testified that she told police officers that Davis dragged her down the stairs, punched her in the face, put a gun in her mouth, and said that he was going to shoot her. The victim further testified that she told police that Davis then "beat her some more," and that she ran to get away from him. When she ran away from him, he shot at her.

{¶34} At trial, the state played a jailhouse call from Davis to the victim during the victim's testimony. In the call, Davis and the victim discuss what the victim could say in court. At one point during the call, the victim stated that she was just going to say "that the gun was a BB gun." Davis got angry at her and said, "man, don't tell them that shit." He further stated, "don't tell there was a BB gun, * * * tell them you were drunk or something." At that point, the victim stated, "I'll tell them that I was on PCP or something."

{¶35} The Ohio Supreme Court has held that when reviewing a challenge to the sufficiency of the evidence, an appellate court cannot "ignore the record"; it must look at

victim called 911. Officer Kirk said the victim was "upset" and "hysterical" when he arrived. Thus, what the victim *orally* told Officer Kirk should have come in under the excited-utterance exception to the hearsay rule. *See Amoroso*, 8th Dist. Cuyahoga No. 100983, 2015-Ohio-95 (although the victim did not have visible injuries when police arrived, the victim was "very upset," and "crying," saying that "her husband grabbed her by the wrist and slammed her into a wall" and that "her husband then punched her in the throat"; we held that the victim's statements to the officer were admissible under the excited-utterance exception to the hearsay rule); *State v. Sanchez*, 8th Dist. Cuyahoga Nos. 93569 and 93570, 2010-Ohio-6153 (victim's statements to police officer identifying her boyfriend as the person who caused her injuries were admitted as excited utterances when the evidence established that when the officer arrived, the victim was upset and crying, and "waving her hands, yelling, just carrying on in an upset manner").

"all of the evidence" submitted at trial before vacating a defendant's conviction. *Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888*, at ¶ 1,* citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶36} The lead opinion concludes that there was not sufficient evidence to convict Davis because the trial court, as the trier of fact, "rejected the victim's testimony that she removed the hair extensions and concluded that Davis must have pulled out the hair extensions." The lead opinion further concludes that when the trial court "found the victim not credible, the [trial] court could not assume an alternative factual scenario where Davis pulled out the hair extensions."

{¶37} I disagree with the lead opinion's interpretation of the trial court's findings. I do not agree that the trial court wrongly "assumed an alternative factual scenario." In paragraph 10 of the lead opinion, the lead opinion quotes the trial court's findings, emphasizing where it believes the trial court "assumed an alternative factual scenario":

> *I do find the fact that the weave was on * * * the driveway, found by* [*the police officer*] *after hearing from* [*the victim*] *that her hair was pulled, her tracks were pulled by the defendant*, and that they were tussling to be more than simply the word of a woman whose credibility at times is questionable.

(Emphasis is in the lead opinion.)

{¶38} It is my view, when reading this finding made by the trial court, that the trial court simply found that Davis pulled the victim's hair — not that Davis pulled the victim's "tracks" *all the way out and threw them on the driveway*. There is nothing in the trial court's findings that indicates it rejected the victim's testimony that she was the one who actually removed her hair weave (or "tracks") and threw it (or "them") on the

driveway — *after* Davis pulled her hair, loosening the tracks. The trial court was simply noting that it believed the victim (at least as to this part) that Davis pulled her hair — hard enough to loosen her "tracks" that were glued to her own hair — *and then* she pulled the extensions out the rest of the way and threw them on the driveway. The trial court further indicated that the fact that the police officer found the weave in the driveway corroborated the fact that Davis and the victim tussled and that Davis pulled the victim's hair.

{¶39} I also disagree with the lead opinion that "[a]ny assertion that a recording of the victim's 911 call to the police constituted evidence of domestic violence would be misplaced because the court found that the victim lied in making the 911 call." In ruling on Davis's Crim.R. 29 motion, however, the trial court explicitly found that the victim lied in the 911 call about Davis having the gun. But the court never stated that it found the victim's entire 911 call to be untrustworthy.

{¶40} I further disagree with the lead opinion that the 911 call (and the victim's statements to the 911 operator that Davis "yanked her hair and loosened a track of her weave") does not corroborate the victim's testimony that Davis pulled the victim's hair such that he loosened her "tracks." The lead opinion acknowledges what the victim told the 911 operator, but then finds that because the victim testified at trial that Davis pulled her hair "on the stairs inside the house," and the trial court found domestic violence based upon "the presence of the hair weave outside on the driveway," that "what happened on the stairs inside the house played no part in the court's ruling." Again, the lead opinion

is misconstruing what the trial court actually found. What happened on the stairs inside the house is entirely relevant — because that is where the act of domestic violence occurred, not in the driveway. The trial court never found that Davis "yanked" the victim's hair in the driveway. Nor did the trial court find that Davis pulled the victim's weave all the way out and threw it in the driveway. The victim testified that she pulled her weave all the way off *after* Davis broke her car window and left; that is when she threw it in the driveway. She was mad when she saw her car window, so she pulled the weave out and threw it on the driveway. Thus, I disagree with the lead opinion's conclusion that "what happened on the stairs inside the house" played no part in the trial court's ruling.

{¶41} It is also my view that the trial court's finding — that Davis and the victim "tussled" and that Davis pulled the victim's hair (hard enough to loosen her "glued in" extensions or weave) — supported a finding of domestic violence under *either* provision of R.C. 2919.25(A) (i.e., that Davis "knowingly caused *or* attempted to cause physical harm" to the victim). Thus, I disagree with the lead opinion's conclusion in paragraph 17 and footnote one. Again, it is my view that the lead opinion has misconstrued the trial court's findings of fact (and is not viewing the evidence in a light most favorable to the prosecution — which is what we are required to do in a sufficiency analysis).

{¶42} Accordingly, I would overrule Davis's second assignment of error and conclude that the state presented sufficient evidence under R.C. 2929.19(A) that Davis

knowingly caused or attempted to cause physical harm to the victim, who was a family or household member.

{¶43}   I also want to briefly respond to the concurring in judgment only ("CJO") opinion.   I agree that the state did not introduce the victim's written statement to police into evidence (but the victim did testify as to what she told police).   I disagree, however, with the CJO opinion that the state only introduced the 911 recordings as impeachment evidence.   It is my view that the state entered the 911 recordings into evidence as substantive evidence of Davis's guilt.   Not only did it do so, it argued as much during Davis's Crim.R. 29 motion for acquittal.

{¶44} When the victim was testifying, the state played the 911 calls in court. Notably, Davis did not object to the state playing the recordings *for any reason*, nor did Davis object to the recordings being admitted at the close of the state's case.   Further, during Davis's Crim.R. 29 arguments to the court, the state argued that the 911 calls were substantive evidence that Davis had a gun and used it to threaten and shoot at the victim. In his response, Davis did not argue that the 911 recordings were not substantive evidence.

{¶45} In this case, the victim's statements to the 911 operator were admissible as substantive evidence under Evid.R. 803(2), which sets forth the excited-utterance exception to the hearsay rule.[3]   This court has held that "[p]recedent overwhelmingly

---

[3] I also disagree with the CJO opinion that the state did not set forth the proper foundation for the 911 call to be admitted as an excited utterance.   It is my view that the state established: (1) the existence of a startling event, (2) the victim-declarant possessed first-hand knowledge, (3) the

supports the conclusion that 911 calls are admissible either as excited utterances or present sense impressions." *State v. Davidson*, 8th Dist. Cuyahoga No. 91224, 2009-Ohio-2125, ¶ 14, citing *State v. Rose*, 8th Dist. Cuyahoga No. 89457, 2008-Ohio-1262; *see also State v. Banks*, 10th Dist. Franklin No. 03AP-1286, 2004-Ohio-6522; *State v. Jackson*, 2d Dist. Champaign No. 2004-CA-24, 2005-Ohio-6143; *State v. Newell*, 5th Dist. Stark No. 2004CA00264, 2005-Ohio-2848; and *State v. McNeal*, 3d Dist. Allen No. 1-01-158, 2002-Ohio-2981. Thus, the trial court, as the factfinder, could most certainly consider the 911 recordings as substantive evidence of Davis's guilt.

{¶46} In this case, it is clear that the victim was recanting her original statements regarding domestic violence at trial. The victim and Davis had been in a relationship for ten years. He was the father of her four children, and provided support and income to her. Unfortunately, it is all too common that victims recant their statements by the time of trial in domestic violence cases. Indeed, the victim in this case had signed a "no prosecution" form in other cases against Davis after initially reporting that he had abused her. Here, there was certainly sufficient evidence to find that Davis committed domestic violence beyond a reasonable doubt based upon the 911 call, her statements to police, and her weave that was observed on the ground by Officer Kirk (corroborating that the two

victim-declarant was most definitely under the stress and excitement of the event, and (4) the victim-declarant's statements related to the startling event. *See State v. Boles*, 190 Ohio App.3d 431, 2010-Ohio-5503, 942 N.E.2d 417, ¶ 34 (6th Dist.), citing *State v. Duncan*, 53 Ohio St.2d 215, 373 N.E.2d 1234 (1978).

"tussled" and Davis pulled the victim's hair hard enough to loosen her glued "tracks," which she subsequently pulled out and threw in the driveway).

{¶47} Accordingly, I respectfully dissent.