[Cite as *Cleveland v. Amoroso*, 2015-Ohio-95.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100983

**CITY OF CLEVELAND**

PLAINTIFF-APPELLEE

vs.

**STEVEN AMOROSO**

DEFENDANT-APPELLANT

CONVICTION AFFIRMED; SENTENCE
VACATED; REMANDED FOR RESENTENCING

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2013 CRB 009128

**BEFORE:** Boyle, P.J., S. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** January 15, 2015

**ATTORNEY FOR APPELLANT**

Paul A. Mancino
Mancino Mancino & Mancino
75 Public Square Building
Suite 1016
Cleveland, Ohio   44113-2098

**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
Law Director
BY:   Verlinda Powell
Assistant City Prosecutor
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio   44113
ON RECONSIDERATION[1]

MARY J. BOYLE, P.J.:

---

[1]The original announcement of decision, *State v. Amoroso*, 2014-Ohio-5239, released on November 20, 2014, is hereby vacated.   This opinion, issued upon reconsideration, is the court's journalized decision in this appeal.   *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

**{¶1}** Defendant-appellant, Steven Amoroso, appeals his conviction and sentence. He raises five assignments of error for our review:

I.   Defendant was denied effective assistance of counsel.

II.   Defendant was denied due process of law when the court overruled his motion for judgment of acquittal and found him guilty, based, in part, on other alleged bad acts.

III.   Defendant was denied his right to confrontation and cross-examination when the court admitted the testimony of Ptrl. Nicolas D'Amico.

IV.   Defendant is entitled to a new trial as the verdict is against the manifest weight of the evidence.

V.   Defendant was denied due process of law when the court immediately imposed a sentence without allowing defendant his right of allocution.

**{¶2}**   Finding merit to his fifth assignment of error, we vacate his sentence and remand for resentencing.

<u>Procedural History and Factual Background</u>

**{¶3}**   In April 2013, Amoroso was charged with domestic violence in violation of R.C. 2919.25(A).   Amoroso pleaded not guilty to the charges, and the matter proceeded to a bench trial.

**{¶4}**   At trial, the city presented two witnesses: Patricia Amoroso ("Patricia") and Nicolas D'Amico, a police officer for the city of Cleveland.   Amoroso testified on his own behalf.   The testimony at trial established the following.

**{¶5}**   At the time of trial, Amoroso and Patricia had been together for over four years and married for two and one-half years.   They moved to Ohio approximately seven months before the incident.   On April 9, 2013, Amoroso took Patricia to pick up her vehicle, which was being repaired at a gas station in Strongsville, Ohio.   After getting her car, Patricia declined

Amoroso's invitation to get something to eat and immediately returned to their condominium in Cleveland. Amoroso returned home after stopping for dinner. Amoroso and Patricia presented completely different versions as to what occurred after Amoroso returned home.

*Patricia's Version*

**{¶6}** According to Patricia, Amoroso returned to the condo approximately three hours later and indicated that he was surprised to see her home. Patricia explained that they were having problems in their marriage but said that she told Amoroso, "we have to figure this out." Amoroso indicated that he was glad, proceeded to have a glass of wine, and then went to bed.

**{¶7}** Shortly thereafter, Amoroso sent Patricia a text from their upstairs bedroom stating, "We both have been unhappy for a long time. No, I've been unhappy for a long time, so have you and to continue this, it's senseless." In response to the text, Patricia went upstairs to talk to Amoroso. Amoroso yelled at her, indicating that they could not discuss it at that time because he had to get up at 5:00 a.m. Patricia insisted to Amoroso that they "need[ed] to talk about it." As to what transpired next, Patricia testified as follows:

> He punched me in the throat, then he grabbed me up against the wall. He had me by the throat. He had my right — left arm twisting it and I kept asking him why he was doing this. * * * I was scared. * * * All of a sudden, he just stopped. I said, "Why are you doing this?" At that time, he had both my wrists and he threw them down and he just smiled at me and then he walked away. And I got my phone and I went — that's when I called the police.

**{¶8}** Patricia told the 911 dispatcher that Amoroso had punched her, and that he was threatening to kill her or leave her paralyzed. Patricia also told the dispatcher that it had happened before. Amoroso left the condo before the police arrived.

**{¶9}** Patricia further testified that she suffered some pain from the incident but admitted that she had no visible bruising. Patricia did not seek any medical attention but obtained an order of protection the day following the incident.

{¶10} Officer Nicolas D'Amico testified that he responded to the call. Officer D'Amico testified that he wrote in his report that Patricia told him that "her husband grabbed her by the wrist and slammed her into a wall." Patricia also told him that "her husband then punched her in the throat before getting into his vehicle and taking off." Officer D'Amico also wrote in his report that he did not see "visible" injuries, but noted that Patricia stated that her wrists and throat hurt from the incident.

*Amoroso's Version*

{¶11} According to Amoroso, when he got home, he found Patricia sitting on the couch, watching television and drinking wine. Amoroso stated that Patricia had also been drinking wine before they went to get her car. Amoroso sat down on the couch and started talking to Patricia about her car.

{¶12} Amoroso testified that Patricia then launched a vulgar, verbal attack against him, calling him a "pig" and telling him that he "would never touch her again, physically as in sexual." He replied, "I'm sorry that you feel that way because that's not how I feel." He then left and went to the front part of the condo. Ten minutes later, Amoroso heard a loud crash, returned to the back of the condo, and discovered that Patricia had thrown the television remote at the wall and smashed it on the tile floor in the kitchen. Amoroso told Patricia that he did not want to fight and that he was going upstairs to call his daughters and then go to bed.

{¶13} As he was talking to his daughters, Patricia entered the bedroom, slammed the door, and stood over Amoroso while he was on the phone. Amoroso immediately got off the phone. At that point, he said that Patricia began "striking" him on the back of the head and hitting him on the back of his neck while he was sitting on the bed. She also started screaming more vulgar language at him. Amoroso stood up, asked Patricia what she was doing, to which

she "continued to strike and flail * * * and hit * * * and kick" him in the stomach. At some point, Amoroso "reached up" and held Patricia's wrist "to stop her from hitting" him. According to Amoroso, he never pushed Patricia into the wall nor did he strike her throat.

*Verdict and Sentence*

{¶14} The trial court found Amoroso guilty of domestic violence. The trial court sentenced him to 180 days in jail, suspended all of the days, and ordered Amoroso to pay a $1,000 fine. The trial court also placed Amoroso on one year active probation. It is from this judgment that Amoroso appeals.

Ineffective Assistance of Counsel

{¶15} In his first assignment of error, Amoroso argues that his trial counsel was ineffective for opening the door and eliciting testimony from Patricia that involved other alleged wrongs that Amoroso committed against Patricia in California and New Mexico.

{¶16} To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶17} In evaluating a claim of ineffective assistance of counsel, a court must give great deference to counsel's performance. *Strickland* at 689. "A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69. *Bradley* at 141.

{¶18} Indeed, a trial counsel's trial tactics should not be subject to "second-guessing" by reviewing courts.

{¶19} Defense counsel asked Patricia questions regarding specific past incidents of abuse and about other problems in their marriage. In answering defense counsel's questions, Patricia revealed incidents of abuse by Amoroso that occurred in New Mexico and California. Defense counsel also inquired as to where Patricia stayed during times of the parties' separation, eliciting testimony that Patricia stayed six weeks in a battered women's shelter in New Mexico. Defense counsel further inquired whether Patricia had previously received a temporary restraining order against Amoroso, which she indicated that she had.

{¶20} We disagree with Amoroso that his defense counsel was ineffective. Defense counsel's questioning of Patricia about past incidents of alleged wrongs was a matter of trial strategy. It appears that defense counsel was attempting to impeach Patricia's testimony regarding the present incident by establishing that in the past, Patricia had also been intoxicated and had been the primary aggressor.

{¶21} First, regarding the present incident, defense counsel asked Patricia extensively about alcohol and "other mood-altering substances" that she had used on April 9, 2013. When defense counsel began questioning Patricia about a past incident, he asked, "[d]o you remember, ma'am, on one occasion in particular wherein you had been drinking when he was driving the car?" Defense counsel then asked, "[y]ou don't remember hitting him or putting the car into park when it was going 60 [m.p.h.]?" When defense counsel continued questioning Patricia about previous incidents of abuse, the city objected and the trial court cautioned defense counsel, "[y]ou know you're opening the door from both sides." Defense counsel responded, "[a]bsolutely," indicating that his questioning was part of his trial strategy.

**{¶22}** The record establishes that this was defense counsel's trial strategy even before the trial started. On the morning of trial, defense counsel attempted to give documents to the city that defense counsel intended to use during the trial, which would support this exact trial strategy. Defense counsel argued to the court that he should be permitted to question the victim about a particular document (a police incident report not related to the present case) because it went "to the credibility of the victim." According to defense counsel, the document showed "her propensity for when she's under the influence of alcohol combined with the concoction of drugs she takes." Defense counsel further explained, "[a]nd next it shows that she has — she's volatile and that's what seems to have been the impetus for virtually each one of those potential usage of the criminal justice system and/or police involvement."

**{¶23}** Thus, it is evident that Amoroso hired his defense counsel, informed counsel about these past incidents, blaming them all on Patricia's drug and alcohol use, and worked with counsel on forming this trial strategy. He cannot now claim that his counsel was ineffective for doing so.

**{¶24}** Amoroso further argues that his trial counsel was ineffective for failing to make a closing argument. We disagree.

**{¶25}** In *State v. Burke*, 73 Ohio St.3d 399, 653 N.E.2d 242 (1995), the Ohio Supreme Court recognized that the waiver of closing argument to a jury does not ipso facto constitute ineffective assistance of counsel, and that the waiver might simply constitute a matter of trial strategy. *Id*. at 404-405. In *Burke*, defense counsel waived closing argument after the state made a brief argument that only touched upon the particular facts of the case in a cursory manner. The Ohio Supreme Court found there existed a valid reason for the strategy on the part of

defense counsel to waive closing argument. *Id*. The court found that, by foregoing closing argument, defense counsel precluded the state from presenting a strong rebuttal. *Id*.

{¶26} This case was a bench trial. At the close of all of the evidence, the prosecutor declined to make a closing argument to the bench. Defense counsel then declined to make a closing argument to the bench. Under the facts of this case, we cannot say that defense counsel's decision to forego a closing argument amounted to ineffective assistance of counsel.

{¶27} But even assuming that defense counsel's failure to make a closing argument was defective, it is our view that a closing argument would not have changed the outcome of trial. Again, this was a bench trial. A trial judge in a bench trial is presumed to know the law and to consider only the relevant, material, and competent evidence in arriving at a decision. *See State v. Bays*, 87 Ohio St.3d 15, 26-27, 716 N.E.2d 1126 (1999).

{¶28} Accordingly, Amoroso's first assignment of error is overruled.

<u>Sufficiency of the Evidence</u>

{¶29} In his second assignment of error, Amoroso argues that the city failed to present sufficient evidence that he committed domestic violence against Patricia. "'"[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), citing *Black's Law Dictionary* 1433 (6th Ed.1990). When an appellate court reviews a record upon a sufficiency challenge, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶30} Amoroso contends that his conviction was not supported by sufficient evidence because it was based solely upon Patricia's testimony. He maintains that there was no physical evidence of her injuries. Looking at the evidence in a light most favorable to the state, however, Patricia's testimony was sufficient to establish that Amoroso committed domestic violence against her beyond a reasonable doubt. *See State v. Owens*, 9th Dist. Summit No. 19932, 2001 Ohio App. LEXIS 173 (Jan. 24, 2001) (the mere absence of corroborating physical evidence does not negate the testimony of a witness to a crime); *State v. Lundy*, 8th Dist. Cuyahoga No. 90229, 2008-Ohio-3359 (simply because the state provided no physical evidence does not mean the record contains insufficient evidence to support the conviction).

{¶31} Further, R.C. 2919.25(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Under this statute, an offender does not have to cause injury to his victim to be guilty of domestic violence. *State v. Roberson*, 5th Dist. Stark No. 2012CA00215, 2013-Ohio-3449, ¶ 18. "'A defendant may be found guilty of domestic violence even if the victim sustains only minor injuries, or sustains no injury at all.'" *Id*., citing *State v. Blonski*, 125 Ohio App.3d 103, 114, 707 N.E.2d 1168 (9th Dist.1997). Any harm is sufficient. *Id.* Patricia's testimony, if believed, established that Amoroso knowingly caused her physical harm.

{¶32} Amoroso further argues in this assignment of error regarding sufficiency of the evidence:

> The court, in rendering its verdict, relied upon other alleged bad acts. Ptrl.
> D'Amico testified to what he was told by Patricia Amoroso, D'Amico did not
> witness this. Even if the other bad acts were for some reason properly admitted,

defense counsel improperly brought those before the court. However, the court could not rely on these alleged bad acts to render a verdict.

**{¶33}** It is not clear what Amoroso is attempting to argue here. Officer Nicholas D'Amico did not testify to any "other alleged bad acts." He testified to what occurred when he arrived at the scene. And if Amoroso is referring to the past incidents of domestic violence that Patricia testified to, he opened the door to that testimony.

**{¶34}** Accordingly, Amoroso's second assignment of error is overruled.

<u>Confrontation Clause and Hearsay</u>

**{¶35}** In his third assignment of error, Amoroso argues that his constitutional rights of confrontation and cross-examination were violated. Amoroso contends that his rights were violated because Officer D'Amico testified as to what Patricia told him when he arrived at the scene. Amoroso further argues that the statements were inadmissible hearsay.

**{¶36}** "It is well-established that the admission or exclusion of evidence rests within the sound discretion of the trial court." *State v. Jones*, 12th Dist. Butler No. CA2012-04-077, 2013-Ohio-654, ¶ 54. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001).

**{¶37}** The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" The United States Supreme Court has interpreted this to mean that the admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial, unless the witness is unavailable and the

defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

{¶38} Patricia, the declarant, testified at trial and was subject to cross-examination. Because Amoroso was able to cross-examine Patricia, his confrontation rights were not violated. *See State v. Simmons*, 8th Dist. Cuyahoga No. 98613, 2013-Ohio-1789, ¶ 27, citing *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 48.

{¶39} We must still determine if Patricia's statements were otherwise inadmissible under the hearsay rules. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Pursuant to Evid.R. 802, hearsay is inadmissible unless it falls within an exception provided by the rules of evidence. Should hearsay statements be admitted improperly, however, such error does not necessarily require reversal of the outcome of the trial if it was harmless. *See Arizona v. Fulminante*, 499 U.S. 279, 306-309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

{¶40} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). Therefore, we will not disturb a trial court's evidentiary ruling unless we find the ruling to be an abuse of discretion, i.e., unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶41} After review, we find that Patricia's statements to Officer D'Amico would fall under the excited utterance exception to the hearsay rule and would be admissible under Evid.R. 803(2). This rule provides that "[a] statement relating to a startling event or condition made

while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule.

{¶42} In order for testimony to be allowed into evidence under the excited utterance exception, the following elements must be met:

> (1) there was an event startling enough to produce a nervous excitement in the declarant, (2) the statement must have been made while under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have had an opportunity to personally observe the startling event.

*State v. Boles*, 190 Ohio App.3d 431, 2010-Ohio-5503, 942 N.E.2d 417, ¶ 34 (6th Dist.), citing *State v. Duncan*, 53 Ohio St.2d 215, 373 N.E.2d 1234.   A central requirement for a statement to be deemed an excited utterance is that the statement "'may not be a result of reflective thought.'" *State v. O'Neal*, 87 Ohio St.3d 402, 411, 721 N.E.2d 73 (2000), quoting *State v. Taylor,* 66 Ohio St.3d 295, 303, 612 N.E.2d 316 (1993).   Further, there is "no per se amount of time after which a statement can no longer be considered to be an excited utterance."   *Taylor* at 303.

{¶43} In determining whether Patricia's statements were excited utterances, we must review Officer D'Amico's testimony regarding the statements and Patricia's demeanor when he arrived at the scene.   Patricia testified that she called the police right after Amoroso had punched her in her throat, pinned her up against the wall by her throat, and was holding onto her wrists.   There is no evidence to indicate how long it was before Officer D'Amico had arrived at the scene.   But Officer D'Amico testified that when he arrived, Patricia was "very upset," and "sitting down on the stairs, crying."   Although Officer D'Amico did not see any visible injuries on Patricia, Patricia complained of wrist pain and throat pain.

{¶44} The facts of this case are very similar to the facts in *State v. Bennett*, 5th Dist. Delaware No. 98CAC02010, 1998 Ohio App. LEXIS 5744 (Nov. 6, 1998).   In *Bennett*, when the police officer arrived, the victim was crying, very upset, and complaining of pain in her right eye.   The officer did not see any visible injuries on the victim, despite her complaining of pain. The victim then told the officer that the defendant had kicked her in her buttocks, forced her to the ground, and struck her on the right side of her head.   The Fifth District found that the victim's statements to police fell under the excited utterance exception to the hearsay rule because she "was still under the stress of the event when she recounted the incident to police officers."   *Id.* at *13.   The victim in *Bennett* had even walked three blocks from her home (where the assault had occurred) to a gas station to call police from a pay phone; she initially met with police at the gas station.   *Id.* at *13-14.   The court still found that there were no intervening circumstances that would prevent the victim's statements from falling under the excited utterance exception to the hearsay rule.   *Id.* at *14.

{¶45} In this case, as in *Bennett*, we find that Officer D'Amico's testimony was sufficient to establish that Patricia's statements were made while she was still under the stress of the nervous excitement caused by the abuse.   She was "very upset" and crying when Officer D'Amico arrived, telling him what had happened to her and complaining of being in pain.   And there were no intervening circumstances.   Thus, we find no abuse of discretion on the part of the trial court in allowing Officer D'Amico to testify as to Patricia's statements to him when he arrived at the scene.

{¶46} Even if we were to find that Patricia's statements should not have come in, however, there was no prejudice to Amoroso.   Patricia testified as to everything that had

happened on the night in question, including the statements she made to Officer D'Amico. Accordingly, the outcome of the trial would not have been different.

{¶47} Amoroso's third assignment of error is overruled.

## Manifest Weight of the Evidence

{¶48} In his fourth assignment of error, Amoroso contends that his conviction was against the manifest weight of the evidence.

{¶49} Unlike sufficiency of the evidence, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence. *Id*., citing *State v. Robinson*, 162 Ohio St. 486, 487, 124 N.E.2d 148 (1955).

{¶50} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as a "thirteenth juror." *Id.* In doing so, it must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

**{¶51}** Amoroso argues that Patricia's version of the events was not credible due to inconsistencies in her testimony and what she told Officer D'Amico. He further argues that her testimony was not credible because she did not have any "visible injuries."

**{¶52}** We note that although we sit as a "thirteenth juror," when assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." *Warren v. Simpson*, 11th Dist. Trumbull No. 98-T-0183, 2000 Ohio App. LEXIS 1073, *8 (Mar. 17, 2000).

**{¶53}** We find that any inconsistencies in Patricia's testimony and in what she reported to Officer D'Amico were minor inconsistencies. And although Officer D'Amico testified that he wrote in his report that there were no "visible" injuries, he also wrote, "victim complained of wrist pain and throat." Officer D'Amico's report is consistent with Patricia's testimony.

**{¶54}** Moreover, as we stated when addressing Amoroso's sufficiency arguments, "'[a] defendant may be found guilty of domestic violence even if the victim sustains only minor injuries, or sustains no injury at all.'" *Id*., citing *State v. Blonski*, 125 Ohio App.3d 103, 114, 707 N.E.2d 1168 (9th Dist.1997).

**{¶55}** Thus, after reviewing the entire record, weighing all of the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find that the factfinder did not clearly lose its way and create such a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered. *Thompkins* at 387.

**{¶56}** Amoroso's fourth assignment of error is overruled.

Right of Allocution

**{¶57}** In his fifth and final assignment of error, Amoroso argues that the trial court erred when it sentenced him without giving him the opportunity to speak before it sentenced him.

**{¶58}** Crim.R. 32(A) provides that before sentencing a defendant, the trial court shall "[a]fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." A defendant has an absolute right to allocution, which is not subject to waiver due to the defendant's failure to object. *State v. Campbell*, 90 Ohio St.3d 320, 325-326, 738 N.E.2d 1178 (2000). The right applies to both felony and misdemeanor convictions. *Defiance v. Cannon*, 70 Ohio App.3d 821, 828, 592 N.E.2d 884 (3d Dist.1990).

**{¶59}** In this case, the trial court found Amoroso guilty and immediately sentenced him. The trial court did not give Amoroso or his attorney the opportunity to speak before it sentenced him. Thus, we find merit to Amoroso's fifth assignment of error. Amoroso is entitled to a new sentencing hearing where he is given a right to speak before he is sentenced.

**{¶60}** The city cites to *State v. Smelcer*, 89 Ohio App.3d 115, 623 N.E.2d 1219 (8th Dist.1993), arguing that it stands for the proposition that we should find the error to be harmless. But in *Smelcer*, we found the error to be harmless because Smelcer's attorney had filed a presentence report that outlined numerous mitigating factors for the trial court to review. *Id*. at 128. Further, Smelcer's attorney spoke extensively on the record and presented the mitigating factors to the trial court. *Id*. No such thing occurred here. Thus, we find *Smelcer* to be distinguishable from the facts of this case.

**{¶61}** Amoroso's fifth assignment of error is sustained.

**{¶62}** Conviction affirmed; sentence vacated; case remanded for resentencing.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
MELODY J. STEWART, J., CONCUR