[Cite as *Cleveland v. Mincy*, 2018-Ohio-3565.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   106224

# CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

# GEORGE MINCY

DEFENDANT-APPELLANT

## JUDGMENT:
## VACATED AND REMANDED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2017 CRB 011051

**BEFORE:**  Boyle, J., E.A. Gallagher, A.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:**  September 6, 2018

**ATTORNEYS FOR APPELLANT**

Mark A. Stanton
Cuyahoga County Public Defender
BY:   Cullen Sweeney
          Robert Blanshard McCaleb
Assistant Public Defenders
310 Lakeside Avenue, Suite 200
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Barbara Langhenry
City of Cleveland Law Director
BY:   Angela Rodriguez
Assistant City Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

{¶1} Defendant-appellant, George Mincy ("Mincy"), appeals his conviction and raises the following assignments of error for our review:

1. The trial court deprived George Mincy of a fair trial when it commented unfavorably on his decision to exercise his Fifth Amendment right to remain silent.

2. The trial court committed reversible error when it found George Mincy guilty of violating R.C. 2919.25(A) based on a finding sufficient only to support a violation of R.C. 2919.25(C), which was not charged and is not a lesser included offense of R.C. 2919.25(A).

3. The trial court erred when it found evidence sufficient to convict George Mincy of only a fourth degree misdemeanor but nevertheless sentenced Mincy as if he had been convicted of a first degree misdemeanor.

4. There was insufficient evidence to permit a reasonable trier of fact to find beyond a reasonable doubt that George Mincy violated R.C. 2919.25(A).

5. The trial court deprived George Mincy of a fair trial when it * * * questioned the complainant after trial but before rendering a verdict.

{¶2} We find that there was sufficient evidence to support Mincy's conviction for domestic violence and, therefore, overrule his fourth assignment of error. We also overrule his fifth assignment of error. Nevertheless, finding merit to Mincy's first assignment of error, we vacate Mincy's conviction and remand for a new trial. Our resolution of Mincy's first assignment of error renders his second and third assignments of error moot.

## I. Procedural History and Factual Background

{¶3} On May 30, 2017, Mincy was charged with domestic violence under R.C. 2919.25(A), which states, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." The charges were based on statements made by the complainant and alleged victim, Charrell Mincy ("Charrell"), George Mincy's 21-year-old daughter.

{¶4} Mincy pleaded not guilty to the charge, and the matter proceeded to a bench trial, where the following evidence was presented.

{¶5} On May 29, 2017, Charrell was at her parents' house where she lived with her son. Charrell stated that around 7:00 p.m. she went inside to grab a can of pop from the kitchen. According to Charrell, Mincy was in the kitchen and they had an argument about her taking the last can of pop and cursed at one another. Charrell testified that she walked out of the house with the can. She stated that Mincy followed her outside and said, "You'd better watch who you're talking to," to which Charrell responded that Mincy should "get out [of her] face." She testified that Mincy then stated that he was going to "slap the s*** out [of her]," and that she responded, "You smack me, I'll beat your a**." She stated that Mincy then "walked up to [her] then he walked away and then he walked back and he smacked the pop out of [her] hand and then he smacked [her]" in the head.

{¶6} Charrell testified that she called the police, who arrived and took Charrell's statement as well as pictures. Charrell testified that she did not suffer any injury as a result of Mincy's smack.

{¶7} Officer James Sanders of the Cuyahoga Metropolitan Housing Authority Police Department testified that he was dispatched to Mincy's house on May 29, 2017, for a report of domestic violence. After speaking to Charrell, Sanders testified that he spoke to Mincy, who told him that "there was a verbal argument between him and his daughter." He stated that another officer on the scene advised him to place Mincy under arrest.

{¶8} The city then rested, and Mincy moved for an acquittal under Crim.R. 29. The trial court denied Mincy's motion. Mincy then rested and renewed his Crim.R. 29 motion, which the court again denied.

{¶9} After the city and Mincy presented their closing arguments, the court asked Charrell a number of questions about her son, educational level, work history, and about the events on May 29, 2017. The trial court also commented on Charrell's verbal pronunciation and asked her to enroll her child in daycare and go back to school. The city objected to the trial court's questions.

{¶10} The trial court also made a number of comments concerning Mincy's decision not to testify. Specifically, the trial court stated, "I'm just trying to get some stuff clear in my head. This is an interesting set of facts. This young man chose not to testify. I had some questions. That's the only reason I'm asking." Moments later, the trial court stated:

> I have similar questions for this young man, but he didn't testify. * * * I cannot find some questions I need answers to. And it's his right. It's his right not to testify. Everybody has a right to remain silent and not testify.

Public defender is relying upon the unknown, for the testimony to carry itself.

{¶11} The trial court also stated, "I would like to ask how this could have been avoided, but I can't ask him because he chose not to say anything, so I can't ask him."

{¶12} The trial court ultimately found Mincy guilty and sentenced him to a 180-day suspended term of incarceration and imposed a $1,000 fine of which $700 was suspended.

{¶13} Mincy appealed, and we sua sponte remanded the case to the trial court to correct a clerical error contained in the trial court's August 9, 2017 journal entry; specifically, the entry did not show that the trial court found Mincy guilty of violating R.C. 2919.25(A). The trial court corrected the clerical error on March 13, 2018, and Mincy's appeal is now properly before us.

## II. Law and Analysis

{¶14} For the ease of discussion, we will address Mincy's assignments of error out of order.

### A. Sufficiency

{¶15} In his fourth assignment of error, Mincy argues that his conviction under R.C. 2919.25(A) was not supported by sufficient evidence.

{¶16} A sufficiency challenge essentially argues that the evidence presented was inadequate to support the jury verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "'The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis sic.)" *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998), quoting *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "[A] conviction based on legally insufficient evidence constitutes a denial of due process." *Thompkins* at 386, citing *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed. 652 (1982). When reviewing a sufficiency of the evidence claim, we review the evidence in a light most favorable to the prosecution. *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996).

{¶17} Mincy argues that there was insufficient evidence that Charrell suffered "physical injury" as required under R.C. 2919.25(A). We disagree.

{¶18} "R.C. 2919.25(A) does not require the state to prove that a victim has sustained actual injury since a defendant can be convicted of domestic violence for merely attempting to cause physical harm to a family member." *State v. Spade*, 5th Dist. Delaware No. 08 CAC 04 0017, 2009-Ohio-2004, ¶ 26, citing *State v. Nielsen*, 66 Ohio App.3d 609, 585 N.E.2d 906 (6th Dist.1990). We have recognized that principle on a number of occasions. *See State v. Stover*, 8th Dist. Cuyahoga No. 104388, 2017-Ohio-291, ¶ 15, citing *Cleveland v. Amoroso*, 8th Dist. Cuyahoga No. 100983, 2015-Ohio-95 ("[A]n offender does not have to cause a tangible injury to his victim in order to be convicted of domestic violence in violation of R.C. 2919.25(A)."); *Strongsville v. Beall,* 8th Dist. Cuyahoga No. 103051, 2016-Ohio-1222, ¶ 7 (A defendant can be convicted of domestic violence under R.C. 2919.25(A) "even without a tangible

injury * * * [if there is evidence that the defendant] was attempting to cause physical harm[.]").

{¶19} While Charrell stated that she did not suffer any injury as a result of Mincy's strike, she testified that Mincy followed her outside, cursed at her and told her he was going to "slap the s*** out of you[,]" slapped her drink out of her hand, and struck her on the side of her head.   Like *Stover* and *Beall*, Charrell's testimony establishes that Mincy was attempting to cause her physical harm by striking her in the head.   *See Ankenbruck v. Ankenbruck*, 11th Dist. Trumbull No. 99-T-0144, 2000 Ohio App. LEXIS 5757, 7 (Dec. 8, 2000), citing *State v. Blonski*, 125 Ohio App.3d 103, 707 N.E.2d 1168 (9th Dist.1997) ("By itself, an open-handed slap to the face has been considered an attempt to cause bodily injury, and, thus, constituted domestic violence.").

{¶20} Mincy also argues that there was insufficient evidence that he acted "knowingly."   "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."   R.C. 2901.22(B).   Charrell testified that Mincy smacked her in the head.   That testimony alone is sufficient to show that Mincy acted knowingly.   *See State v. Habo*, 11th Dist. Portage No. 2012-P-0056, 2013-Ohio-2142, ¶ 18 (finding sufficient evidence that the appellant "knowingly caused or attempted to cause physical harm to sustain a conviction of domestic violence" because a witness testified that the appellant "smack[ed] their daughter across the face"); *State v. Hill*, 2d Dist. Montgomery No. 20678, 2005-Ohio-3701, ¶ 9 ("Hill's conviction can rest independently upon his having

allegedly punched Edmondson 'into the gut,' which a reasonable finder of fact could find to have been an act whereby Hill would have been aware that his conduct would probably cause injury, satisfying the culpability state of knowingly[.]").

{¶21} Further, while Charrell was the only witness to testify, courts consistently hold that a victim's testimony can constitute sufficient evidence for a conviction. *See State v. White*, 3d Dist. Seneca No. 13-16-21, 2017-Ohio-1488, ¶ 36, citing *State v. Roberts*, 1st Dist. Hamilton No. C-040547, 2005-Ohio-6391 (a rape victim's testimony was sufficient evidence of penetration); *State v. Quinn*, 2d Dist. Clark No. 2014-CA-44, 2016-Ohio-139, ¶ 52 ("Based on [the victim's] testimony, which was consistent with the statements she made to others on the evening of the incident, the record supports a conclusion that the jury had sufficient evidence to convict Quinn of two counts of domestic violence."); *State v. W.J.,* 10th Dist. Franklin No. 14AP-457, 2015-Ohio-2353, ¶ 35, citing *State v. Timmons*, 10th Dist. Franklin No. 13AP-103, 2014-Ohio-3520 ("A victim's testimony is sufficient evidence to support sexual conduct by vaginal intercourse or fellatio."*)*; *State v. Bacho*, 8th Dist. Cuyahoga No. 93828, 2010-Ohio-4885, ¶ 13 ("S.W.'s testimony provides ample support for appellant's conviction of these charges."); *State v. Wring*, 8th Dist. Cuyahoga No. 85711, 2005-Ohio-5443, ¶ 11 (The state "presented sufficient evidence to support the theft conviction through the victim's testimony."); *State v. Williams*, 8th Dist. Cuyahoga No. 57464, 1990 Ohio App. LEXIS 5221, 5 (Nov. 29, 1990) ("A victim's testimony, if believed, is sufficient to obtain and sustain a rape conviction.")*.*

**{¶22}** In fact, in *Amoroso*, 8th Dist. Cuyahoga No. 100983, 2015-Ohio-95, we stated:

> Amoroso contends that his conviction was not supported by sufficient evidence because it was based solely upon Patricia's testimony. He maintains that there was no physical evidence of her injuries. Looking at the evidence in a light most favorable to the state, however, Patricia's testimony was sufficient to establish that Amoroso committed domestic violence against her beyond a reasonable doubt.

*Id.* at ¶ 30.

**{¶23}** Although not directly related to the issue of sufficiency, the dissent finds it "absurd" that Mincy was unable to argue the parental-discipline affirmative defense because Charrell was older than 18.

**{¶24}** Foremost, whether Mincy was entitled to an affirmative defense has no bearing on the sufficiency of the evidence underlying his conviction. *See State v. Hancock*, 108 Ohio St.3d 57, 2009-Ohio-160, 840 N.E.2d 1032, ¶ 37, quoting *Caldwell v. Russell*, 181 F.3d 731 (6th Cir.1999) ("[T]he due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime."); *State v. Simes*, 8th Dist. Cuyahoga No. 103672, 2016-Ohio-7300, ¶ 20, citing *Hancock* ("[A] sufficiency challenge does not implicate affirmative defenses.").

**{¶25}** Further, it is clear that the parental-discipline affirmative defense is inapplicable when the victim is "legally an adult." *State v. Blevins*, 133 Ohio App.3d 196, 198, 727 N.E.2d 169 (12th Dist.1999); *see also State v. Miller*, 134 Ohio App.3d

649, 652, 731 N.E.2d 1192 (1st Dist.1999), citing R.C. 2912.22(B) ("[A] parent may use reasonable corporal punishment as a means to discipline a child who is under the age of eighteen[.]").   Here, Charrell was 21 years old at the time of the incident and, therefore, that affirmative defense was clearly not available to Mincy.

{¶26} Finally, to the extent that the dissent reasons that Mincy was the "head-of-household who, * * * provide[d] a home and support for [Charrell] and her child" and therefore had a "right to reasonably discipline or demand respect in his home," once again, the right to reasonably discipline one's child with physical force is not eternal.   Instead, that right ends when the child turns 18.   While we are sympathetic to the fact that a minor family feud over a can of pop has resulted in criminal charges that could have lasting implications for Mincy, we cannot excuse Mincy's conduct simply because he financially supports his adult daughter and grandchild.

{¶27} Therefore, we find that there is sufficient evidence to support Mincy's conviction for domestic violence under R.C. 2919.25(A) based upon  Charrell's testimony and overrule his fourth assignment of error.

### B. Mincy's Right to a Fair Trial

{¶28} Mincy's first and fifth assignments of error both argue that the trial court deprived him of a fair trial when it (1) "commented unfavorably on his decision to exercise his Fifth Amendment right to remain silent," and (2) "questioned the complainant after trial but before rendering a verdict."

{¶29} Because the trial court questioned Charrell before it commented on Mincy's right to remain silent, we will analyze the trial court's questioning of Charrell first.

{¶30} Evid.R. 614(B) allows a trial court to interrogate witnesses in an impartial manner.

> In questioning a witness pursuant to Evid.R. 614(B), a court may not indicate by its intensity, tenor, range, and persistence the court's opinion of a witness's credibility or the sufficiency of the evidence. * * * Furthermore, a trial judge's questions must be relevant and void of a suggestion of bias[.]

*State v. Wilbon*, 8th Dist. Cuyahoga No. 82934, 2004-Ohio-1784, ¶ 8, citing *State v. Davis*, 79 Ohio App.3d 450, 607 N.E.2d 543 (4th Dist.1992), and *Sandusky v. DeGidio*, 51 Ohio App.3d 202, 555 N.E.2d 680 (6th Dist.1988).

{¶31} We review "a trial court's interrogation of a witness for an abuse of discretion." *Wilbon* at ¶ 9, citing *State v. Prokos*, 91 Ohio App.3d 39, 631 N.E.2d 684 (4th Dist.1993).

{¶32} Here, after the trial concluded, the trial court asked Charrell about how she cared for her child, her level of education, work history, and manner of speech. A review of the transcript of the proceedings shows that the trial court was scolding Charrell for her life choices and admonishing her for the way she spoke. Specifically, the trial court made the following statements:

TRIAL COURT:  You've got one child?

CHARRELL:  Yeah.

TRIAL COURT:  Yeah?

CHARRELL:  Yes.

TRIAL COURT:    How do you spell yeah?

CHARRELL:    Hmm.

TRIAL COURT:    Huh.    How do you spell huh?

CHARRELL:    H-u-m.

* * *

TRIAL COURT:    Have you attempted to go back to school?    Have you enrolled back in a school?

CHARRELL:    No.

TRIAL COURT:    So you said you're still trying to go back?

CHARRELL:    Yeah.

TRIAL COURT:    Yeah?

CHARRELL:    Yes.

TRIAL COURT:    Is yeah proper English?

CHARRELL:    No.

TRIAL COURT:    Why do you continue to say it, especially in court?  Where you are sitting like this, aren't you supposed to be talking proper English?

CHARRELL:    Yes.

* * *

TRIAL COURT:    Now Ms. Mincy, if you would do me a favor, maybe yourself, if you can call Head Start, see if you can enroll your child in the program and get some daycare and that might be helpful because if your child's gonna grow up talking like you, that might be a problem.  Your communication skills are somewhat lacking.

And it would be nice if you would also in my opinion enroll in school. I cannot make you go to school, but after you've had the work experiences you've had and the life experiences you've had, it might be beneficial that you get back to school for your degree so you can further your education.

{¶33} While we find the trial court's timing of its questions as well as its questioning of, statements to, and treatment of Charrell to be concerning, the trial court's questions were not prejudicial to Mincy. *See State v. Baston*, 85 Ohio St.3d 418, 426, 709 N.E.2d 128 (1999), citing *Sandusky* (overruling the appellant's assignment of error concerning the panel's questions because "[t]he questioning was neither excessive nor prejudicial to the defendant."). If anything, the trial court's questions were prejudicial to the city, which objected to the trial court's questions. Moreover, Mincy has not shown which questions were prejudicial to him and, therefore, we overrule his fifth assignment of error.

{¶34} Turning to Mincy's first assignment of error and his argument concerning his right to remain silent, the Fifth Amendment to the Constitution of the United States provides that no person "shall be compelled in any criminal case to be a witness against himself[,]" and applies to the states through the Due Process Clause of the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). "When a defendant is instructed that he has the 'right to not testify at trial,' it follows that he has a right to remain silent at trial and cannot be compelled to testify against himself." *State v. McElroy*, 8th Dist. Cuyahoga Nos. 104639, 104640, and 104641,

2017-Ohio-1049, ¶ 27, citing *State v. Hayes*, 11th Dist. Portage No. 2014-P-0044, 2016-Ohio-2794. This is often called the privilege against self-incrimination. *Id.*

**{¶35}** To warrant reversal, a trial court's error regarding a defendant's privilege against self-incrimination must be structural. *In re K.B.*, 12th Dist. Butler No. CA2006-03-077, 2007-Ohio-1647, ¶ 22. A structural error occurs when a defendant suffers a violation of his constitutional rights. *See State v. Miller*, 9th Dist. Summit No. 27048, 2015-Ohio-279, ¶ 8 ("A court commits structural error when it wrongfully denies a defendant his [Sixth Amendment right to his] counsel of choice[.]"); *State v. Williams*, 10th Dist. Franklin No. 02AP-507, 2003-Ohio-2694, ¶ 45, citing *State v. Hill*, 92 Ohio St.3d 191, 749 N.E.2d 274 (2001) ("Structural errors 'deprive defendants of basic protections without which a criminal trial cannot [reliably] serve its function as a vehicle for determination of guilt or innocence.'"). Such an error "affect[s] the framework within which the trial proceeds," and is more than "simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

**{¶36}** "[N]either a prosecutor nor a judge may comment on a criminal defendant's failure to testify. * * * Consistent with [that] principle, a trial judge, sitting as a trier of fact, may not consider a criminal defendant's failure to testify as evidence of the defendant's guilt." *In re K.B.* at ¶ 10-11.

**{¶37}** Nevertheless, "[i]n a bench trial, the trial court is presumed to have considered only admissible evidence unless the record indicates otherwise." *State v.*

*Reddy*, 192 Ohio App.3d 108, 2010-Ohio-5759, 948 N.E.2d 454, ¶ 58 (8th Dist.), citing *Cleveland v. Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125 (8th Dist.). "This presumption 'may be overcome only by an affirmative showing to the contrary by the appellant.'" *State v. Pearson*, 10th Dist. Franklin Nos. 14AP-793 and 14AP-816, 2015-Ohio-3974, ¶ 13, quoting *State v. Wiles*, 59 Ohio St.3d 71, 571 N.E.2d 97 (1991).

**{¶38}** In *In re K.B.*, the trial court "made multiple, specific comments concerning appellant's failure to testify[,]" including, "And I guess the biggest let down I had because I anxiously awaited, and I think any jury or anybody would anxiously await what [appellant] has to say. [He] didn't want to speak at the trial[,]" and "No, he never got on the stand and that was critical. It's a trial tactic, whatever." *Id.* at ¶ 17-19. On appeal, the Twelfth District found that the court's statements, especially its statement that the appellant's failure to testify was "critical," "strongly suggest that it considered appellant's silence in reaching its delinquency decision" and violated the appellant's Fifth Amendment rights. *Id.* at ¶ 20. The court found that the trial court's "repeated statements regarding appellant's silence * * * strongly suggest a shift in the burden of proof from the state to appellant, requiring appellant to explain his conduct." *Id.* at ¶ 22. As a result, the court found that the trial court's error was structural and required reversal. *Id.* at ¶ 23.

**{¶39}** In contrast, in *Pearson*, the trial court, before rendering its verdict, "wondered why the appellants would go into that closed motel with a cluttered and

dangerous hall and stairway, stay 15 minutes, give or take, if not to do a theft?" *Id.* at ¶ 10. On review, the Tenth District chose not to interpret "the trial court's comments as referring to Hammond's decision not to testify." *Id.* at ¶ 14. Instead, the court found that the trial court's comments referred "to issues raised at trial but not sufficiently addressed to the trial court's satisfaction." *Id.*

{¶40} Similarly, in *Reddy*, we found that when the trial court stated "that Reddy failed to explain the evidence against him," it meant that "his defense did not adequately address all of the evidence against him." *Id.* at ¶ 59. We, therefore, found that the trial court's statement "did not reference Reddy's decision not to testify[,]" and we overruled his assignment of error. *Id.*

{¶41} After questioning Charrell but prior to rendering its verdict, the trial court stated, "I'm just trying to get some stuff clear in my head. This is an interesting set of facts. This young man chose not to testify. I had some questions. That's the only reason I'm asking." Moments later, the trial court stated, "I have similar questions for this young man, but he didn't testify. * * * I cannot find some questions I need answers to. And it's his right. It's his right not to testify. Everybody has a right to remain silent and not testify. Public defender is relying upon the unknown, for the testimony to carry itself." The trial court also stated, "I would like to ask how this could have been avoided, but I can't ask him because he chose not to say anything, so I can't ask him." The trial court then found Mincy guilty of domestic violence.

**{¶42}** After comparison to *In re K.B.*, *Pearson*, and *Reddy*, we find that the trial court's statements concerning Mincy's decision not to testify violated his Fifth Amendment rights. Unlike *Pearson* and *Reddy*, the trial court's statements were not expressing its belief that Mincy's defense counsel failed to address the evidence against him. Instead, like *In re K.B.* and despite the trial court's recognition of Mincy's right to not testify, the trial court made numerous statements suggesting that Mincy failed to answer questions that the trial court found to be important by choosing to exercise that right. We find that, like *In re K.B.*, the trial court's "repeated statements regarding appellant's silence * * * strongly suggest a shift in the burden of proof from the [city] to [Mincy], requiring [Mincy] to explain his conduct." *Id.* at ¶ 22.

**{¶43}** Therefore, in conclusion, we overrule Mincy's fourth and fifth assignments of error, sustain Mincy's first assignment of error, vacate Mincy's conviction, and remand for a new trial. Further, our resolution of Mincy's first assignment of error renders his second and third assignments of error moot.

**{¶44}** The conviction is vacated and the case is remanded for a new trial.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MARY J. BOYLE, JUDGE

EILEEN A. GALLAGHER, A.J., CONCURS;
ANITA LASTER MAYS, J., DISSENTS WITH
SEPARATE OPINION

ANITA LASTER MAYS, J., DISSENTING:

{¶45} I concur with the majority's first assignment of error concerning Mincy's right to remain silent and would sustain this assignment. However, I respectfully dissent regarding the sufficiency of the evidence assignment of error. I would find that the evidence was insufficient to support the conviction. I would therefore vacate the conviction and discharge the defendant.

{¶46} Mincy was convicted of domestic violence pursuant to R.C. 2919.25(A), a first-degree misdemeanor after a bench trial. R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." *Id.* The mens rea of knowingly for purposes of R.C. 2919.25 is supported where, "regardless of purpose * * * the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Physical harm to persons" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶47} The fact that Charrell is a family and household member is not in issue. The remaining inquiry is whether Mincy "knowingly caused or attempted to cause" physical harm to Charrell. *Strongsville v. Beall*, 8th Dist. Cuyahoga No. 103051, 2016-Ohio-1222, ¶ 3.

{¶48} The city argues that an alleged domestic violence victim does not have to suffer any injury at all for an offender to be guilty of domestic violence pursuant to R.C.

2919.25(A). Cited in support of the city's position are four cases decided by this court. In each of the cited cases, there was supplemental evidence of injury or circumstances that distinguish the cases from the instant case and support the elements of the offense.

**{¶49}** In *Middleburg Hts. v. Musa*, 8th Dist. Cuyahoga No. 97914, 2013-Ohio-366, the husband physically dragged the wife around the house and outside of the residence, causing bruising. In *Cleveland v. Amoroso*, 8th Dist. Cuyahoga No. 100983, 2015-Ohio-95, a "he said, she said" account of domestic violence without witnesses or visible injuries, the evidence included past incidents of domestic violence between the parties. The conviction was affirmed.

**{¶50}** *Beall* involved a couple with a contentious history. The husband tackled the wife, knocking her to the ground, and wrestled the wife's cell phone from her grasp, injuring one of her fingers. *Id*. at ¶ 5. This court held that the tackle plus injury constituted proof of culpability and physical harm and upheld the conviction under R.C. 2919.25(A).

**{¶51}** The city also cites *State v. Stover*, 8th Dist. Cuyahoga No. 104388, 2017-Ohio-291. Stover was not welcome at his mother's home. *Id*. at ¶ 5. The mother was playing cards with her friends when she heard Stover banging on the door. A sofa was pushed against the door and the mother called the police. *Id*.

**{¶52}** Stover broke into the door, ran to the kitchen and "retrieved two steak knives." *Id*. at ¶ 6. The mother and Stover were then "face-to-face," and Stover threatened his mother with the knives, making twirling "martial arts" gestures with them.

Stover told his mother that "somebody is going to die tonight," prompting a hasty exit by most of the mother's friends. *Id.*

{¶53} The mother rushed to prevent Stover from locking himself in the bathroom as was his custom but Stover pushed her "so hard that she fell to the ground." *Id.* at ¶ 7. The mother claimed that she was not injured and officers said that she and a friend that had remained with her were "nervous and fearful." *Id.* at ¶ 8. This court affirmed, finding that Stover was aware that his actions would probably cause injury. *Id.* at ¶ 30.[1]

{¶54} Generally in a parent-child domestic violence case, a parental right exists to administer reasonable and proper corporal punishment based on the totality of the circumstances.

> [T]he Supreme Court of Ohio [has] indicated the legislature did not intend to prohibit "proper and reasonable parental discipline" but, rather, incidents of corporal punishment that cause substantial physical injuries. *State v. Suchomski*, 58 Ohio St.3d 74, 567 N.E.2d 1304 (1991); *State v. Hicks*, 88 Ohio App.3d 515, 624 N.E.2d 332 (1993); cf., *State v. Ivey*, 98 Ohio App.3d 249, 648 N.E.2d 519 (1994) (construing R.C. 2919.22, Endangering Children).

*State v. Jones*, 140 Ohio App.3d 422, 428-429, 747 N.E.2d 891 (8th Dist.2000).

{¶55} Mincy is the head of household who, along with his wife who is also Charrell's mother, provides a home and support for Charrell and her child. Charrell admits that Mincy helps her care for the child. Yet, because Charrell's age is beyond the

---

[1] The dissent questioned the sufficiency of the evidence and suggested that the sole focus should be on whether Stover knowingly attempted to cause his mother physical harm. *Id.* at ¶ 36.

scope of the corporal punishment defense to domestic violence charges,[2] the absurd result is that Mincy's right to reasonably discipline or demand respect in his home has expired. *See State v. Miller*, 134 Ohio App.3d 649, 731 N.E.2d 1192 (1st Dist.1999), where the father's disciplinary defense was invalid because his daughter was 18 years of age. The *Miller* dissent rejected application of a "'bright-line rule'" and urged the adoption of an obligation-to-support until the age of 21 or similar analysis, arguably an analytical framework that is more suited to modern family circumstances. *Id.* at 654. I would do so in this case.

{¶56} Charrell's self-serving testimony is the sole evidence in the record that Mincy slapped the soda from Charrell or that he touched her at all. This is true in spite of the fact that there allegedly were other witnesses to the outside exchange. Mincy told police that the altercation was verbal and, according to police testimony, he was calm and cooperative at the time. No evidence depicting the presence of the soda can was introduced.

{¶57} Even accepting that Mincy was close enough to touch or slap Charrell, she denied suffering any injury, was not fearful, and in fact, admitted that she was trying to fight with her father, who she repeatedly referred to as "b**ch," and threatened to "beat [his] a**." (Tr. 19 and 22.) Surely, if Mincy was attempting to inflict physical harm, he was in a position to do so. I would find this case to be a case of mutual combat.

---

[2] Evidence that Charrell suffered from a physical or mental disability extends the corporal punishment defense to the age of 21.

{¶58} I would also point out that the trial court's verdict did not support the presence of the elements of R.C. 2919.25(A) which holds that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." The trial court stated that the "elements of [domestic violence] are that there's a threat of violence and the threat was proven here." (Tr. 52.) Mincy correctly states that the elements cited by the trial court are actually from R.C. 2919.25(C). "No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." *Id*. R.C. 2919.25(C) was not charged in this case.

{¶59} "R.C. 2919.25(C) is not a lesser included offense of R.C. 2919.25(A)." *Cleveland v. Jenkins*, 8th Dist. Cuyahoga No. 80758, 2002-Ohio-6046, ¶ 15, citing *State v. Rihm*, 101 Ohio App.3d 626, 629, 656 N.E.2d 372 (2d Dist.1995). In *Jenkins*, the appellant's conviction was affirmed because the complaint tracked the language of R.C. 2919.25(A) and (C) "almost verbatim." *Id*. at ¶ 16. In this case, the complaint recites the provision of R.C. 2919.25(A) and (A)(2)[3] only. No element of the charged offense in this case involves a threat of violence.

{¶60} Based on a thorough review of the record, I would find that, when viewed in a light most favorable to the city, the evidence is not sufficient to support that the elements of R.C. 2919.25(A) have been established in this case.

---

[3] R.C. 2919.25(A)(2) provides that the violation is a first-degree misdemeanor.